FILED
2026 Jul-07  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ASHLY KELLY,

      **Plaintiff,**

v.

GULFCO OF ALABAMA, LLC,
d/b/a TOWER LOAN OF
HUNTSVILLE,

      **Defendant.**

**Case No. 5:26-cv-319-HDM**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on two fully-briefed motions: Plaintiff Ashly Kelly's Motion to Strike Affirmative Defenses, (docs. 9, 17, 18), and Defendant Gulfco of Alabama LLC's ("Gulfco") Motion to Compel Arbitration, (docs. 14, 19, 20). For the reasons set out herein, Gulfco's motion is due to be **GRANTED** and Kelly's **DENIED AS MOOT**.

## I.    BACKGROUND

Gulfco, doing business under the name Tower Loan of Huntsville, is a limited liability company that offers private consumer loans. (Doc. 14-1, ¶¶ 2, 4). On April 19, 2023, Gulfco issued a loan to Kelly in the amount of $7,525.87, and, as part of

this transaction, Kelly executed two documents relevant to this order. *Id.*, ¶¶ 3, 6. First, Kelly signed Gulfco's standard promissory note (the "Note"), which sets out the terms and conditions of her loan and, importantly, includes an arbitration agreement that is identified by bold, capital letters. *Id.*, ¶¶ 3–5; (Doc. 14-2 at 2). The Note states that Kelly "**agrees to all provisions of this arbitration agreement**" and that the parties "agree that if there are **any** disputes between them, those disputes will be resolved by arbitration." (Doc. 14-2 at 2) (second emphasis added). The Note defines "arbitration" as "a method of resolving disputes between parties without going to court" and permits "[a]ny party [to] require the dispute or claim to be submitted to an arbitrator in accordance with this provision." *Id.* The Note further states,

> **The arbitrator's decision will be final and binding on all parties.** The parties agree that the funds loaned to [Kelly] were transactions in interstate commerce, that this loan involves interstate commerce, and that **the Federal Arbitration Act applies to this transaction**. [Kelly] and [Gulfco] understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

*Id.* (emphasis added). The Note uses expansive language to be clear that its arbitration provision applies to "**all** claims and disputes between" Kelly and Gulfco, including any claim or dispute "arising out of, in connection with, or relating to" the April 19, 2023, loan and, most crucially, "[t]he validity of this arbitration agreement"

and "[w]hether the claim or dispute must be arbitrated." *Id.* (emphasis added). There is an exception to this broad language that excuses the parties from arbitration "for matters of $10,000 or less." *Id.*

The second relevant document Kelly executed on April 19, 2023, is simply titled "**<u>IMPORTANT</u>**," and reads:

> **Arbitration: My loan papers include an arbitration provision, when I borrow money from Tower Loan, I agree that any disputes, disagreements or claims I might have with Tower Loan will be decided by an arbitrator instead of a Judge, Jury or Court.  I have been advised to read the arbitration provision carefully before signing the loan papers.**

(Doc.   14-3). Both the Note and the arbitration acknowledgement (the "Acknowledgement") bear Kelly's signature. (Docs. 14-2 at 1, 14-3).

The Note established a repayment plan that required Kelly to make thirty consecutive monthly payments, with the entire balance of the loan to be paid off on or before November 3, 2025. (Doc. 14-2 at 1). After Kelly failed to make her scheduled payments, Gulfco sued her in the District Court of Madison County, Alabama, and, in January 2024, received a default judgment in the amount of $9,622.65.[1] (Doc. 14-4).

---

[1] This sum consists of $7,525.87 for the principal balance of the loan, a $96 surcharge, an $11.43 maintenance fee, $62.25 in late fees, $1,552.10 in interest, and $375 in attorney's fees. (Doc. 14-4 at 1).

Kelly commenced this action against Gulfco on February 25, 2026. (Doc. 1). She alleges that Gulfco reported materially inaccurate information about the loan to TransUnion and Equifax, maintained incomplete and inaccurate records, and then failed to conduct a reasonable investigation when she submitted multiple formal complaints. *Id.*, ¶¶ 13–29. Kelly alleges that Gulfco's actions violated the reinvestigation provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), *id.*, ¶¶ 30–39, thereby causing her to "suffer[] damage to her credit reputation, lowered credit scores, denial or impairment of credit opportunities, emotional distress, anxiety, loss of time, and out-of-pocket expenses," *id.*, ¶ 29. In its answer, Gulfco denied all liability and asserted thirty affirmative defenses. (Doc. 6).

On April 13, 2026, Kelly moved to strike Gulfco's affirmative defenses on the basis that they "fail to meet the pleading standards required under the Federal Rules of Civil Procedure and controlling case law." (Doc. 9 at 1). Two weeks later, Gulfco moved to compel Kelly to arbitrate her claims rather than litigating them in this court. (Doc. 14). Because the court agrees with Gulfco that this matter must be submitted to arbitration, it need not address the merits of Kelly's motion to strike.

## II.    LEGAL STANDARD

The Eleventh Circuit has held that, in ruling on a motion to compel arbitration, courts must apply a "summary judgment-like standard." *Bazemore v. Jefferson Cap.*

4

*Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Under this standard, a court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (quoting Fed. R. Civ. P. 56(a)). *See also Reilly v. Avery Auto Sales, Inc.*, No. 1:21-cv-857, 2021 WL 6050706, at *2 (N.D. Ala. Dec. 21, 2021). As a *pro se* plaintiff, the court will consider Kelly's pleadings with "more leeway" and "special care." *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992).

## III.   DISCUSSION

The court finds that Gulfco's Motion to Compel Arbitration is due to be granted because the parties entered into a valid arbitration agreement that delegates the very question of arbitrability to the arbitrator. Kelly has not specifically challenged that delegation provision and Supreme Court and Eleventh Circuit precedent requires this court to enforce the arbitration agreement.

The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005), which Congress enacted more than a century ago as "a response to hostility of American courts to the enforcement of arbitration agreements," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The "primary substantive provision" of the FAA is Section 2, *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), which provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . **shall be valid, irrevocable, and enforceable**," 9 U.S.C. § 2 (emphasis added).[2] The FAA "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citations omitted). To decide whether the parties entered into an enforceable arbitration agreement, the court looks to state contract law. *Caley*, 428 F.3d at 1368.

Because arbitration agreements are simply contracts, the parties may agree "to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). *See also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (parties may delegate "threshold issues . . . such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" to an

---

[2] Sections 3 and 4 of the FAA "implement [Section] 2's substantive rule," *Hall v. Talladega Hous. Auth.*, No. 1:25-cv-647, 2026 WL 659308, at *3 (N.D. Ala. Mar. 9, 2026). Section 3 requires a court to stay a case upon application of one of the parties if it is "satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," 9 U.S.C. § 3, while Section 4 permits a party to petition for an order compelling arbitration, *id.* § 4.

arbitrator); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (parties may "agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."). "An antecedent agreement of this kind is typically referred to as a 'delegation provision,'" *Jones*, 866 F.3d at 1264, and it will bind the parties if "it 'clearly and unmistakably' evidences the parties' intent 'to delegate questions of arbitrability to the arbitrator,'" *Hall v. Talladega Hous. Auth.*, No. 1:25-cv-647, 2026 WL 659308, at *3 (N.D. Ala. Mar. 9, 2026) (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 936–40 (11th Cir. 2018)). "When 'an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—**the courts only retain jurisdiction to review a challenge to that specific provision**.'" *Jones*, 866 F.3d at 1264 (quoting *Parnell*, 804 F.3d at 1144) (emphasis added). If the party opposing arbitration challenges only "the arbitration provision generally" but does not specifically challenge the validity and enforceability of the delegation provision, the court "must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Parnell*, 804 F.3d at 1148. Simply put, the parties may contractually agree that the scope and validity of the arbitration agreement are themselves subject to arbitration and, if they do so, a court is limited to reviewing the delegation provision that establishes such terms. If the party

7

opposing arbitration never challenges that provision specifically, the delegation provision controls and the threshold question of arbitrability must be reserved for the arbitrator.

This court's opinion in *Board of Trustees of University of Alabama v. Humana, Inc.*, No. 2:24-cv-165, 2024 WL 1748434 (N.D. Ala. Apr. 23, 2024), explains how a delegation provision affects the analysis of a motion to compel arbitration. In *Humana*, this court noted that, "while issues of arbitrability are generally decided by the court, parties may agree to delegate this decision to an arbitrator" and that the question of whether they have done so is a matter of state contract law. *Id.* at *3. Applying a "standard of review . . . analogous to a summary judgment motion," *id.* at *2, the court found that there was no genuine dispute of fact that the parties entered an agreement enforceable under Alabama contract law "to submit questions of arbitrability to an arbitrator," *id.* at *4. Accordingly, the court recognized that its "role with respect to arbitrability [was] narrow," *id.*, and it "possesse[d] **no power** to decide the arbitrability issue," *id.* at *3 (citation and quotation marks omitted) (emphasis added). Instead, the court "retain[ed] jurisdiction for a limited purpose—to review any challenge . . . to [the] delegation provision." *Id.* at *5. Because the plaintiff "advance[d] only a general challenge to the applicability of the arbitration provision" rather than a "direct challenge to the

8

validity of the delegation provision," the court was required to "treat the delegation provision as valid" and compel the parties to arbitrate. *Id.*

This court will resolve Gulfco's Motion to Compel Arbitration with the same two-prong analysis as in *Humana* and decide (1) whether the parties are bound by an enforceable delegation provision and, if so, (2) whether Kelly has directly and specifically challenged that provision. Because the answers to those questions are, respectively, yes and no, the court will grant Gulfco's Motion to Compel Arbitration and need not consider Kelly's Motion to Strike.

### A. Are the Parties Bound by an Enforceable Delegation Provision?

In its Motion to Compel Arbitration, Gulfco argues that "the parties entered into a valid delegation provision contained within a valid agreement to arbitrate" and that, "[a]s this Delegation Provision requires that the scope or validity of the parties' agreements should be decided by the arbitrator, and not the Court, this matter should be referred to arbitration for any further resolution." (Doc. 15 at 9). The court agrees. As explained *supra*, the validity of the parties' arbitration agreement, along with the delegation provision contained therein, will be determined under Alabama contract law, which requires an offer, an acceptance, consideration, and mutual assent. *See, e.g.*, *Am. Com. Bank, NA v. Progress Leasing, LLC*, No. 2:23-cv-117, 2023 WL 8518216, at *3 (N.D. Ala. Aug. 22, 2023) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). Applying a "summary judgment-like standard,"

*Bazemore*, 827 F.3d at 1333, the court finds there is no genuine dispute that each of these elements is satisfied. Gulfco offered the Note—which contains the arbitration agreement and its delegation provision—to Kelly and she accepted its terms by her signature. (Docs. 14-2 at 1; 14-3). *See also Gerstenecker v. Gerstenecker*, 238 So. 3d 646, 652 (Ala. 2017) (citation and quotation marks omitted) (a party may accept a contract through any action that is "positive and unambiguous," including, but not limited to, his or her signature). Kelly's signature on the Note also demonstrates the parties' mutual assent to the terms of the agreement. *See Bowen v. Sec. Pest Control, Inc.*, 879 So. 2d 1139, 1142 (Ala. 2003) (citation and quotation marks omitted) ("The purpose of a signature on a contract is to show mutual assent."). Although her signature on the Note would be sufficient, the Acknowledgement is further proof of acceptance and mutual assent, as Kelly expressly agreed in writing that she was aware of the terms of the arbitration provision and agreed to be bound by them. (Doc. 14-3). Finally, under Alabama law, "[c]onsideration for an agreement to arbitrate exists when both parties promise to resolve claims through arbitration rather than another judicial process." *Carusone v. Nintendo of Am., Inc.*, No. 5:19-cv-1183, 2020 WL 3545468, at *4 (N.D. Ala. June 30, 2020) (applying Alabama law). Because Gulfco has demonstrated offer, acceptance, mutual assent, and consideration, the court finds that the arbitration provision within the Note— including the delegation provision—is a valid and enforceable contract.

10

In opposing Gulfco's Motion to Compel Arbitration, Kelly never attempts to create a fact question on any of these elements. Rather, her entire argument is that, even if the arbitration provision in the Note is valid, Gulfco waived its ability to enforce it by suing her for the unpaid loan in Alabama state court. (Doc. 19). Kelly attempts to frame Gulfco's state court action in several different ways, claiming that it "materially breached" the Note, "waived any right to compel arbitration," is "judicially estopped" from compelling arbitration, or acted in a manner "fundamentally inconsistent" with the purpose of arbitration. *Id.* at 2–4. But her essential argument never changes: Gulfco sued her and so she should be able to sue Gulfco, despite the arbitration provisions of the Note.

There are two problems with this argument. First, Gulfco sued her in state court for less than $10,000, (doc. 14-4 at 2), and the arbitration provision of the Note permits litigation "for matters of $10,000 or less," (doc. 14-2 at 2). Thus, that lawsuit in no way constitutes a waiver—or a breach or any other term Kelly cares to use—of the arbitration provision of the Note. The second problem with Kelly's strategy is that she assumes that the Note is enforceable: she never challenges the existence of offer, acceptance, mutual assent, or consideration, (*see generally* doc. 19), and, therefore, has not created a fact question on whether the arbitration agreement within the Note—including the delegation provision—constitutes a valid, enforceable contract.

11

Thus, there is no genuine dispute that the arbitration provision within the Note constitutes a valid and enforceable contract that, per the FAA, "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Within that valid arbitration agreement, Kelly and Gulfco explicitly included a delegation provision of the kind routinely affirmed by the Supreme Court and the Eleventh Circuit, *see, e.g.*, *Rent-A-Center, W., Inc.*, 561 U.S. at 68–69; *Parnell*, 804 F.3d at 1146, when they agreed to arbitrate "[w]hether the claim or dispute must be arbitrated" and "validity of [the] arbitration agreement," (doc. 14-2 at 2). This delegation provision binds the parties because "it clearly and unmistakably evidences the parties' intent to delegate questions of arbitrability to the arbitrator," *Hall*, 2026 WL 659308, at *3 (internal quotation marks omitted), and this "court retains jurisdiction for a limited purpose—to review any challenge a party makes to a delegation provision," *id.* at *5.

### B.   Has Kelly Challenged the Delegation Provision of the Note?

As explained *supra*, because the parties' valid arbitration agreement contains an unambiguous delegation provision, this "court[] only retain[s] jurisdiction to review a challenge to that specific provision." *Jones*, 866 F.3d at 1264. If Kelly only challenges "the arbitration provision generally" but does not specifically challenge the validity and enforceability of the delegation provision therein, the court "must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Parnell*, 804 F.3d at 1148. *See also Humana*, 2024 WL 1748434,

at *5 ("When a delegation provision is not challenged, a court must treat the delegation provision as valid.").

Even reading Kelly's opposition to Gulfco's Motion to Compel Arbitration with the "special care" and "leeway" due to a *pro se* plaintiff, *Dean*, 951 F.2d at 1213, the court finds she has "advance[d] only a general challenge to the applicability of the arbitration provision" rather than a "direct challenge to the validity of the delegation provision," *Humana*, 2024 WL 1748434, at *5. Despite the considerable space Gulfco dedicates to the delegation provision in its motion, Kelly never challenges its validity or enforceability. As explained *supra*, Kelly's entire strategy in opposing arbitration is to contest the Note's arbitration provision *as a whole* by arguing that Gulfco "materially breached" the Note, "waived any right to compel arbitration," or is "judicially estopped" from compelling arbitration. (Doc. 19 at 2–4). As in *Humana*, "[t]here is no direct challenge to the validity of the delegation provision" specifically and Kelly relies solely on "a general challenge to the applicability of the arbitration provision." *Humana*, 2024 WL 1748434, at *5. Per the parties' own contract, such a challenge is reserved exclusively for the arbitrator, not this court. *See Rent-A-Center*, 561 U.S. at 72.

13

## IV.   CONCLUSION

For all of the reasons set out above, the court finds that there is no genuine dispute that Kelly and Gulfco entered into a "valid, irrevocable, and enforceable" agreement to arbitrate, 9 U.S.C. § 2, that delegates the very question of arbitrability to an arbitrator. Kelly has not challenged this delegation provision, and because the court is "satisfied that the issue . . . is referable to arbitration," *id.* § 3, the court **ORDERS** as follows:

1.      Defendant Gulfco of Alabama LLC's Motion to Compel Arbitration, (doc. 14), is **GRANTED** and the parties are **ORDERED** to submit their dispute, including the antecedent question of arbitrability, to arbitration in compliance with the arbitration provisions of the Note. The court **STAYS** this case and **ORDERS** the parties to file a joint status report on or before **January 7, 2027, and every ninety days thereafter**. The court retains jurisdiction over this case for post-arbitration proceedings authorized by the Federal Arbitration Act. 9 U.S.C. §§ 9–11.

2.      Plaintiff Ashly Kelly's Motion to Strike Affirmative Defenses, (doc. 9), is **DENIED AS MOOT**.

3.      The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Plaintiff Ashly Kelly at her address of record.

**DONE** and **ORDERED** on July 7, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE